Plaintiff Aubrey J. Prince ("Prince") filed this employment discrimination suit against his employer, the Illinois Department of Revenue ("IDR"). Prince alleges discrimination on the basis of his disability and retaliation, both in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* IDR has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Prince has failed to state a claim upon which relief may be granted because Prince has not alleged that he is "disabled" under the ADA and has not shown a causal link between any statutorily protected activity and any adverse employment action. For the reasons set forth below, IDR's Motion to Dismiss is granted.

Prince initially filed a form complaint with limited factual elaboration, explaining only that he had "complained of discrimination" and was then "informed that (he) had been suspended," in retaliation for these complaints. (R. 1 at 10.) After IDR filed its Motion to Dismiss, Prince filed a Response further detailing the factual basis for his claims. (*See* R. 21.) The Court construes this filing as a Motion for leave to file an amended complaint. *See Korsunskiy v. Gonzales*, 461 F.3d 847, 850 (7th Cir. 2006) ("If the judge can see what the *pro se* litigant is driving at, that is enough."). Such leave should be freely given "when justice so requires." Fed R. Civ. P. 15(a)(2). The Court therefore grants the implied Motion for leave to amend, and deems the attachment to Prince's Response together with Prince's original Complaint to constitute Prince's Amended Complaint.

Statement of Facts

The following facts are taken from Prince's Response to IDR's Motion to Dismiss (deemed part of his Amended Complaint) and are assumed to be true for purposes of deciding the Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). As Prince is proceeding *pro se*, his pleadings are construed liberally. *See Henderson v. Sheahan*, 196 F.3d 839, 845-846 (7th Cir. 1999). Prince is a Revenue Auditor at IDR. (R. 21 at 7, ¶ B). He began working for IDR on or around September 1, 1999, and began requesting disability-related accommodations in 2000. (*Id.* ¶ E). Prince has diabetes, heart disease, and has had both hips replaced. (*Id.* ¶ C). He claims that he made IDR aware of these ailments throughout his employment, and after each of several medical leaves of absence he returned to work with doctor-signed ADA accommodation requests. (*Id.* ¶ D). His requested accommodations included asking for a lighter computer, a lighter computer case, and limited travel. (*Id.* ¶ E).

IDR did not accommodate Prince to the extent that he had requested, and in 2005 Prince began complaining to IDR management about disability discrimination. (*Id.* ¶ G). In what Prince claims were a series of retaliatory actions as a result of these complaints, Prince alleges that IDR denied him promotions and pay-step increases, that his work was scrutinized more than his co-workers, and that he was "written up" or disciplined. (*Id.* ¶ H). On February 8, 2009, Prince filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and the United States Equal Employment Opportunity Commission ("EEOC"). On March 9, 2009, Prince was informed that he had been suspended. (*Id.* at 11, ¶1). On March 30, 2009, Prince filed a second charge with IDHR and EEOC that included a reference to his suspension. (*Id.*).

Prince received, and attached to his original Complaint, two Dismissals and Notices of Rights from the EEOC dated May 6 and June 22, 2009. The notices were first sent to him via certified mail

and went unclaimed, but were re-sent via regular mail on August 19 and August 21, 2009. (See R. 21 at 10 & 13). Prince then filed this action on September 24, 2009, within ninety days of receiving the second mailings of the notices.

Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *Id.*

Discussion

To bring a claim for discrimination in violation of the ADA, a plaintiff must first allege that he is disabled. *See Duncan v. State of Wisc. Dep't. of Health & Family Servs.*, 166 F.3d 930, 935 (7th Cir. 1999). In relevant parts, the ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities" of the individual, "a record of such impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1). An impairment substantially limits a major life activity when a person "is either unable to perform a major life activity or is significantly restricted as to the condition, manner or duration under which the individual can perform the major life activity as compared to the average person in the general population." *Furnish v. SVI Sys., Inc.,* 270 F.3d 445, 450 (7th Cir. 2001) (citations omitted). In assessing whether an impairment is substantially limiting, courts consider the nature and severity of the impairment, its duration or expected duration, and its permanent or long term impact or its expected impact. *See* 29 C.F.R. § 1630.2(j)(2).

Here, Prince's bare allegations that he has been diagnosed with diabetes, heart conditions, and hip problems do not establish that those conditions are disabilities under the ADA, as "[n]ot every medical affliction amounts to, or gives rise to, a substantial limitation on a major life activity." *Cassimy v. Bd. of Educ. of Rockford Public Schs., Dist. No. 205*, 461 F.3d 932, 936 (7th Cir. 2006). For example, Prince's allegation that he has diabetes does not mean that he is disabled under the ADA, because he has not alleged that his diabetes limited or restricted his ability to perform major life activities. *See Nawrot v. CPC Int'l*, 277 F.3d 896, 904 (7th Cir. 2002). Additionally, Prince's statements that he has heart disease and has had hip replacements are insufficient to establish a disability under the ADA without allegations that those conditions substantially limit a major life activity. *See, e.g., Kotwica v. Rose Packing Co.*, No. 07 C 5262, 2009 WL 3151238 (N.D. Ill. Sept. 25, 2009) (Lefkow, J.) (hip replacement not disability *per se* because plaintiff, by her own admission, did not, at the time of her termination, have a physical or mental impairment that substantially limited her ability to work); *Korzeniowski v. ABF Freight Sys., Inc.*, 38 F. Supp. 2d 688, 692-93

(N.D. Ill. 1999) (employee with arteriosclerotic heart disease not disabled for purposes of ADA claim because evidence did not show substantial limitation of any major life activity). Because his Amended Complaint does not explain how, or whether, his various medical conditions substantially limit his major life activities, Prince has not sufficiently alleged that he is disabled within the meaning of the ADA.

Whether or not Prince is, in fact, disabled under the ADA, he may be able to state an ADA claim under the third prong of the ADA's disability definition, that IDR "regarded" him as substantially limited in one or more major life activities (even if he was not actually so limited). *See, e.g.*, *Riemer v. Ill. Dep't of Transp.*, 148 F.3d 800, 804 (1998). Prince's allegations that he took repeated medical leaves of absence, and returned from those absences with requests for accommodations, may support a claim that IDR regarded him as disabled as a result. He has not yet presented such a claim to the Court with sufficient reference to the required definition of disability, however, and has therefore failed to state adequately state a claim for relief under the ADA. *See, e.g., id.* at 804 (plaintiff had stated an ADA claim where he alleged that he was disabled under the ADA, although he did not specify under which prong he sought to proceed); *Haiman v. Village of Fox Lake*, 55 F. Supp. 2d 886, 894-95 (N.D. Ill. 1999) (same). Because Prince has not alleged that he is disabled pursuant to the ADA, IDR's Motion to Dismiss his ADA discrimination claims is granted.

Prince also claims that he was retaliated against when he began to complain about IDR's failure to accommodate his alleged disabilities. To state a claim for retaliation under Title VII, the ADA, or the ADEA, a plaintiff must allege: 1) that he engaged in a statutorily protected activity; 2) that he suffered an adverse employment action; and 3) that there was a causal link between the protected activity and the employer's action. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). Because the ADA's anti-retaliation provision, 42 U.S.C. § 12203(a), uses comparable language to that of Title VII, 42 U.S.C § 2000e-3(a), Title VII retaliation cases provide guidance for the assessment of ADA retaliation claims. *See Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009); *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 511 (7th Cir. 1998). The anti-retaliation provision of Title VII makes it an "unlawful employment practice for an employer to discriminate against any of his employees . . . [1] because he has opposed any practice made an unlawful employment practice by this subchapter, or [2] because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). When an employee complains to management that they believe the employer has engaged in employment discrimination, this communication is protected under the "opposition" clause of the anti-retaliation provision. *Crawford v. Metro. Gov't. of Nashville*, 129 S. Ct. 846, 851 (2009). Requests for accommodations are likewise statutorily protected. *See Cassimy*, 461 F.3d at 938.

Even if Prince cannot allege that he is disabled under the ADA, he could still state a claim for retaliation if IDR "retaliated against him for attempting to raise a good-faith claim under the ADA." *Id.* There must be allegations of a causal link between the adverse employment action and the protected activity, however. *See, e.g., Amrhein v. Health Care Serv. Corp.*, 546 F.3d 854, 858 (7th Cir. 2008). Establishing this causal link, as in Title VII cases, requires allegations "that the employer would not have taken the adverse action 'but for' the protected expression." *Johnson v.*

*City of Fort Wayne, Ind.* 91 F.3d 922, 939 (7th Cir. 1996). Here, however, Prince does not allege that the people to whom he complained about his discrimination had anything to do with his suspension, and does not clearly explain the basis for his belief (beyond suspicious timing) that there was a causal link between his complaints of discrimination and the allegedly retaliatory actions that were taken against him. As a result, he has failed to state a claim for retaliation, and IDR's Motion to Dismiss his ADA retaliation claims is granted.

Finally, with respect to both his discrimination and retaliation claims, Prince's Amended Complaint lacks sufficient information regarding the timing of IDR's allegedly discriminatory actions for the Court to determine whether his claims have been timely asserted. A claim of employment discrimination is time-barred if the plaintiff does not file a charge of discrimination within 300 days, at a maximum, after the alleged unlawful employment practice occurred. *See* 42 U.S.C. § 2000e-5(e)(1). With respect to claims regarding discrete employment actions, "each discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 (2002); *see also Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007) (a discrete act of discrimination "is an unlawful employment practice that must be brought to the EEOC's attention within 300 days of its occurrence."). The limitations period begins on the date of the adverse personnel action. *See Fairchild v. Forma Sci., Inc.*, 147 F.3d 567, 574 (7th Cir. 1998). Here, Prince "*began* requesting accommodations" in 2000 and complained of discrimination "around 2005." (R. 21 at 7, ¶ G). He does not specify when IDR subsequently engaged in any specific unlawful employment practice, so it cannot be determined whether any, or all, of IDR's allegedly discriminatory acts occurred more than 300 days prior to the filing of his EEOC complaints and therefore would be outside the scope of his actionable claims.

IDR's Motion to Dismiss is therefore granted in its entirety. In light of Prince's pro se status and his request that he be allowed to further amend his complaint, however, the dismissal of his Amended Complaint is without prejudice. The Court previously denied without prejudice Prince's Motion for Appointment of Counsel. Given the potentially more complicated issues now raised in this case, the Court will appoint counsel for Prince in order to determine if there are any viable claims that may be filed in a Second Amended Complaint. A status hearing is set before the Court at 9:30 AM on August 16. Appointed counsel is directed to appear at that time.